IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MICHAEL B. SMITH, JR.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:14-cv-01284-JEH

**Order and Opinion**

Now before the Court is the Plaintiff Michael B. Smith, Jr.'s Motion for Summary Judgment (Doc. 12), the Commissioner's Motion for Summary Affirmance (Doc. 18), and Smith's Reply (Doc. 20). For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for additional proceedings consistent with this Order and Opinion.[1]

**I**

On December 6, 2012, Smith filed an application for disability insurance benefits alleging disability beginning on July 7, 2011.[2] His claim was denied initially on June 14, 2013, and was denied upon reconsideration on August 29, 2013. On September 13, 2013, Smith filed a request for hearing concerning his application for disability insurance benefits and supplemental security income. A hearing was held before the Honorable Raymond L. Souza on February 25,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 9) on the docket.

[2] According to the Commissioner's Memorandum in Support of Motion for Summary Affirmance and the transcript in this case, Smith also filed for supplemental security income on March 11, 2013. Neither the ALJ's nor the Plaintiff's Brief in Support of Motion for Summary Judgment note that fact.

1

2014, and at that time Smith was represented by an attorney. Following the hearing, Smith's claim was denied on March 27, 2014. His request for review by the Appeals Council was denied on June 24, 2014, making the ALJ's Decision the final decision of the Commissioner. Smith filed the instant civil action seeking review of the ALJ's Decision on July 16, 2014.

## II

At the time he applied for benefits, Smith was 30 years old living in Colchester, Illinois with his wife and stepson. He was a high school graduate and previously served in the United States Marine Corps for over five years and went to Iraq. While he was in Iraq, Smith was involved in an IED attack, suffered injuries, and was thereafter discharged for medical reasons. He underwent 18 surgeries on his right leg/knee which was injured by the IED blast. After leaving the military, Smith worked as a restaurant cook, tire changer, and most recently, last worked as a diesel mechanic in 2011. While he was still a diesel mechanic, Smith tripped in a hole on July 7, 2011 and twisted his right knee. In October 2011, he underwent an arthroscopy on his right knee due to continued complaints of pain. In 2012, he had hardware removed from his right leg, again because of continued complaints of pain. In January 2013, Smith underwent osteochondral autograft transfer and high tibial osteotomy with removal of shrapnel from the right knee. At the hearing before the ALJ, Smith testified that he received some earnings from Veterans Affairs (VA) in 2013.

Smith came into the hearing using a cane, and testified that the VA prescribed it to him and he used it most of the time. He testified to problems sitting, stiff legs after about 10 to 15 minutes of standing, stiff legs after about 10 minutes of standing in one place, and the ability to walk about 100 yards before he would have to sit down. He said that the VA gave him grab rails for the shower and the toilet. He testified that he stopped physical therapy the past

winter (2013). He also testified that he was taking only over-the-counter medication for pain.

Smith further testified that his pain in his right leg at the time of the hearing was, on average, a seven or eight out of 10, eight meaning the pain was so bad that Smith would have to go to the emergency room but he could take himself there. He also testified to occasional pain in his left foot's second toe which was previously broken when he was in the military. He additionally testified that he used a hearing aid in his left ear due to a ruptured eardrum and he experienced short-term memory loss.

In terms of his mental health, Smith testified that he was still going through counseling at the VA for his posttraumatic stress disorder (PTSD) once every four to six weeks. He stated that he experienced situational outbursts when he was around large groups of people and large groups of children that were screaming. He stated that counseling was helping him. He was taking Prozac and Prazosin for anxiety and depression.

In regard to activities of daily living, Smith explained that his wife would occasionally have to help him dress and bathe when his pain was bad. He otherwise helped out around the house by putting clothes in the washer, folding clothes, preparing simple meals like sandwiches and microwave meals, and going shopping with his wife. He said he saw family at least once a week and he saw friends about once a week.

Smith's attorney then asked him some questions about the migraines he experienced, the shrapnel in his face, the tremors in his hands, his use of a TENS unit[3] for his right knee, and his use of a heating pad on his right knee. Smith

---

[3] Transcutaneous Electrical Nerve Stimulation machine includes "electrodes [which] are placed at specific sites on a user's body depending on the physical location of their pain. The current travels through electrodes and into the skin stimulating specific nerve pathways to produce a tingling or massaging sensation that reduces the perception of pain." tensunit.com (visited Sept 2, 2015).

testified that the frequency of his migraines was getting worse and that the tremors in his hands were also getting worse. He stated that his right ankle would swell and so he had to lie down and elevate it once or twice a day for about one hour each time. As for the pain Smith testified to experiencing, he stated that it made walking, concentrating, and sleeping difficult, and that he could lift only about 10 pounds without pain. Smith further testified that he suffered from panic attacks once or twice a month. Also, Smith explained that his wife was employed as his caregiver through the VA.

The ALJ then questioned the Vocational Expert (VE), Leslie Lloyd. The ALJ asked the VE to assume an individual of Smith's age, education, and work experience who had the ability to do sedentary work with a sit/stand option allowing the person to sit or stand alternatively at will as long as the person was not off task more than 10 percent of the work period; who could occasionally climb ramps or stairs, stoop, and crouch; who could not kneel or crawl; who must avoid all exposure to extreme cold and excessive vibration; and who must avoid all use of hazardous machinery. The ALJ further asked the VE to assume that the individual was limited to simple work as described in the Dictionary of Occupational Titles "as SVP levels 1 and 2, routine and repetitive tasks," and the individual was limited to only occasional interaction with the general public and with coworkers. The VE testified that the individual would be unable to perform Smith's past work.

When the VE was asked whether there were jobs that could be done by such an individual, the VE responded that there were and identified two: surveillance system monitor and companion. The ALJ then asked the VE to assume that the identified individual was limited to jobs he could perform while using a handheld device for uneven terrain and prolonged ambulation. The ALJ asked the VE whether such a limitation would change any of the identified jobs.

The VE responded that such a limitation would not. The ALJ next asked the VE to assume that the identified individual would have to elevate his bilateral lower extremities 18 inches frequently while seated, and whether that would change any of the identified jobs. The VE responded that it would eliminate both jobs. The VE also testified that two unexcused absences per month, on a consistent basis, by the identified individual would not be tolerated. Finally, the VE testified that work at all exertional levels would be precluded for a person who had two or more unexcused or unscheduled breaks (not just water or bathroom breaks) in addition to regularly scheduled breaks.

### III

In his Decision, the ALJ found that Smith had the severe impairments of PTSD, depression, anxiety, traumatic brain injury, left eardrum rupture, status post-right lower extremity surgical repair, and degenerative joint disease of the right knee. The first of Smith's two claimed errors before this Court relates to the ALJ's Residual Functional Capacity (RFC) finding.

The ALJ made the following RFC finding:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he requires the ability to sit or stand alternatively at will, provided he is not off task more than 10% of the work period. Furthermore, the claimant can never climb ladders, ropes or scaffolds; can only occasionally climb ramps or stairs, stoop, and crouch; and he can never kneel or crawl. The claimant must avoid all exposure to extreme cold, excessive vibration, hazardous machinery (defined as unshielded moving machinery) and unprotected heights. He is limited to simple work as defined in the Dictionary of Occupational Titles (DOT) as specific vocational preparation (SVP) levels one and two, routine and repetitive tasks; can have only occasional interaction with the general public; and while he can be around coworkers throughout the day, he can have only occasional interaction with those coworkers.

AR 16. In making that finding, the ALJ detailed what Smith provided on his application for disability benefits, including his physical and mental symptoms, the extent to which his movement was limited because of his physical symptoms, the extent to which his mental symptoms interfered with doing things, the medical treatment he had received, and the medications he was prescribed. The ALJ also recounted Smith's testimony which focused largely on his right knee injury and the fact that Smith had to undergo three surgeries between 2011 and 2013. The ALJ noted Smith's testimony about the pain in his right knee, the way the pain interfered with his ability to do things, and what Smith did and did not do to treat the pain. The ALJ further recounted Smith's testimony about his PTSD, when it was exacerbated, and the physical effects from it.

The ALJ discussed Smith's medical records pertaining to his right knee injury in 2011 and subsequent surgeries on that knee. The ALJ detailed Smith's recovery periods immediately following those surgeries including his participation in physical therapy following those surgeries. The ALJ additionally detailed what physical examinations of Smith's right knee revealed at various times during the relevant period and X-ray results of his right knee. In regard to Smith's alleged mental limitations related to PTSD, depression, anxiety, and traumatic brain injury, the ALJ detailed why the medical evidence did not support Smith's claim that the limitations made him incapable of performing all work activity. The ALJ highlighted a March 2010 neuropsychological test, a compensation and pension examination through the VA in August 2011, a December 2011 CT scan, a February 2012 consultative psychiatric examination, a May 2013 consultative psychiatric examination, and a repeat neuropsychological evaluation in 2013. The ALJ tracked Smith's GAF scores between 2010 and 2013 as well.

The ALJ went on to discuss Smith's activities of daily living which included a discussion of his applications for participation in the VA Caregiver Support Program. Next, the ALJ considered third party statements submitted by Smith's wife and his mother. Finally, the ALJ considered the medical opinion evidence in the case including a Department of Veterans Affairs service-connected disability rating, VA denial of individual unemployability, statements of physicians who conducted Smith's compensation and pension examinations in August 2011, the opinions of the consultative psychiatrist who saw Smith in 2012 and 2013, and the opinions of State agency medical and psychological consultants.

The ALJ's determination as to Smith's credibility is the second of the errors Smith claims the ALJ committed in this matter. Central to the ALJ's RFC assessment was his finding that Smith's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not entirely credible. When considering Smith's allegations of pain in light of the record evidence, the ALJ stated that, "Despite [Smith's] allegations of pain, he is not currently taking any prescription pain medications and the evidence does not show any long term use of any pain medications aside from the recovery periods following his surgeries." AR 20. The ALJ further stated:

> The undersigned has also considered the claimant's allegations as to the duration, frequency and intensity of his symptoms, as well as precipitating and aggravating factors as noted above, but the claimant's medical treatment, the observation of medical professionals and his own admissions regarding his daily activities undermine his claims of severe symptoms keeping him from doing more than very minimal sitting, standing, or walking, preventing him from focusing on and completing tasks, and requiring him to lie down and elevate his leg during the day.

7

AR 24.  The ALJ went on to state, "Of note, the claimant was able to participate in hearing [sic] closely and fully without being distracted, without any overt pain behavior and was able to respond to questions in an appropriate manner."  AR 24.

## IV

Smith makes two arguments:  1) the RFC assessment failed to include detailed findings and address Smith's ability to perform full time work on a regular and continuing basis; and 2) the ALJ's credibility determination is patently erroneous.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  See *Schmidt v Apfel*, 201 F3d 970, 972 (7th Cir 2000); *Pugh v Bowen*, 870 F2d 1271 (7th Cir 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 USC § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v Barnhart*, 297 F3d 589, 593 (7th Cir 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  *Delgado v Bowen*, 782 F2d 79, 82 (7th Cir 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision.  *Richardson v Perales*, 402 US 389, 390 (1971), *Henderson v Apfel*, 179 F3d 507, 512 (7th Cir 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled.  Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is

eligible for disability. See 20 CFR §§ 404.1566, 416.966 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 USC § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v Califano*, 614 F2d 142, 143 (7th Cir 1980). The factual determination is made by using a five-step test. See 20 CFR §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

Id. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v Schweiker*, 732 F2d 605 (7th Cir 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v Heckler*, 779 F2d 1250 (7th Cir 1985); *Halvorsen v Heckler*, 743 F2d 1221 (7th Cir 1984).

In the instant case, Smith claims error on the ALJ's part at Step Four.

### A

Smith argues that the ALJ's credibility determination is patently erroneous. Smith argues that the ALJ failed to credit Smith's persistent and consistent efforts to seek pain relief and psychiatric assistance, and that it is questionable what else the ALJ would have Smith do to prove his unbearable pain and mental distress. Smith further argues that the ALJ erred in using the "sit and squirm" test for purposes of making his credibility determination. The Commissioner disputes that the ALJ committed any legal or factual error in making his credibility finding that would require this Court to reverse the Decision.

Determinations of credibility made by the ALJ will not be overturned unless the findings are patently wrong. *Shideler v Astrue*, 688 F3d 306, 310-11 (7th Cir 2012). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v Barnhart*, 442 F3d 536, 538 (7th Cir 2006) (citation omitted). SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." An ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating

factors, "functional limitations," and treatment (including medication). *Scheck v Barnhart*, 357 F3d 697, 703 (7th Cir 2004); *Rice v Barnhart*, 384 F3d 363, 371 (7th Cir 2004).

Here, the ALJ's decision to discount Smith's pain testimony is not supported by the record. The record is replete with Smith's continuing complaints of pain in his right knee and his attempts to rid himself of that pain. The ALJ in this case discounted Smith's testimony and statements regarding his pain, reasoning that the objective evidence did not support those continuing complaints. The ALJ relied upon objective evidence of Smith's physical examinations, X-rays, a CT scan, physical therapy reports, and Smith's medical records before, at the time of, and after his surgeries in 2011, 2012, and 2013. However, SSR 96-7p(4) states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."

The Seventh Circuit Court of Appeals recently addressed the "recurrent error made by the Social Security Administration's administrative law judges" of "discounting pain testimony that can't be attributed to 'objective' injuries or illnesses – the kind of injuries and illnesses revealed by x-rays." *Adaire v Colvin*, 778 F3d 685, 687 (7th Cir 2015). "An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v Colvin*, 739 F3d 1046, 1049-50 (7th Cir 2014). In *Adaire*, the Seventh Circuit explained that the ALJ's error in that case to discount the claimant's pain testimony was "well-nigh incomprehensible" where there *was* plenty of objective evidence of pain. Id. Similarly here, there is ample objective evidence of Smith's pain: over 20 surgeries on his right knee, remaining shrapnel in his head and right leg,

11

deformity of the right leg, arthritis in the right knee, and atrophy over his quadricep muscles. Furthermore, the ALJ partly and erroneously relied upon the fact that Smith was not currently taking any prescription pain medication and that the evidence did not show any long term use of pain medication. AR 20. The record, in fact, includes Smith's reports that he did not use the pain medication because it did nothing for him. The ALJ's error in this regard is compounded by the fact that some of the records he cited in support of his finding that Smith's pain was gone included Smith's statements that the pain actually remained. Ultimately, for these reasons, there is insufficient support in the record for the ALJ's credibility finding. See *Giles ex rel Giles v Astrue*, 483 F3d 483, 488 (7th Cir 2007) ("We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which the ALJ relies"). This matter must be remanded for the ALJ to reassess Smith's credibility based upon the entirety of the record, including consideration of *both* the objective and subjective evidence.

**B**

Smith also argues that the ALJ's RFC assessment failed to include detailed findings and address Smith's ability to perform full time work on a regular and continuing basis. Specifically, Smith argues that the ALJ erred by making no mention of Smith's migraines when evaluating what impairments were severe, ignoring evidence of his sleep problems, barely addressing his memory difficulties, summarizing the evidence to support the RFC in an "incredibly misleading" way, and ultimately by failing to consider the combined effects of his impairments. The Commissioner counters that the ALJ made his RFC determination in light of all the evidence of record, including medical opinions. The Commissioner disputes that the ALJ made the complained of errors in regard to the RFC finding where the RFC was much more deferential to Smith's

12

subjective complaints than the opinions of the State agency physicians and where no physician or other medical professional opined that Smith was more limited than the ALJ found him to be. Further, the Commissioner argues that Smith fails to point out a single misrepresentation of the medical record and the ALJ considered the combined impact of Smith's impairments though the ALJ addressed them separately. In reply to the Commissioner, Smith cites to particular records in the transcript which note Smith's continued reports of knee pain.

The ALJ's credibility determination was critical to the RFC that he formulated. Because the Court finds that the ALJ's credibility determination is not sufficiently supported, the Court cannot find that the ALJ's RFC is supported by substantial evidence. Hence, the ALJ must reevaluate his RFC finding upon remand as well.

V

For the reasons set forth above, Smith's Motion for Summary Judgment (Doc. 12) is GRANTED, the Commissioner's Motion for Summary Affirmance (Doc. 18) is DENIED, and this matter is REMANDED pursuant to sentence four of 42 USC § 405(g) for the ALJ to reassess Smith's credibility and to reevaluate Smith's RFC. The Clerk's Office is hereby directed to enter Judgment in favor of the Plaintiff and against the Defendant. This matter is now terminated.

*It is so ordered.*

Entered on September 2, 2015.

s/Jonathan E. Hawley<br>U.S. MAGISTRATE JUDGE